UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- X
                                     :

UMBRA LLC,
                                     :

                         Plaintiff,       :    17 Civ. _____

                                     :

          -against-                  :

WAXMAN SALES, LLC,                   :    **COMPLAINT**

                                     :

                       Defendant.     :

------------------------------------------------------------------- X

Plaintiff Umbra LLC ("Umbra"), for its Complaint against defendant Waxman Sales, LLC ("BirdRock") alleges as follows:

## NATURE OF THE ACTION

1.      This action seeks monetary and equitable relief for counterfeiting and trademark infringement under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and unfair competition under New York common law.

## THE PARTIES

2.      Plaintiff Umbra is a New York limited liability company having its principal place of business at 1705 Broadway Street, Buffalo, New York 14212. Umbra does business in this judicial district.

3.      On information and belief, defendant Waxman Sales, LLC is a Texas limited liability corporation with its principal place of business at 11805 Fm 2244 Road, Suite 600, Bee Cave, Texas 78738-5397.

4.     On information and belief, Waxman Sales, LLC conducts business under numerous business names and brands, including BirdRock Brands, BirdRock Home, and/or Sofia + Sam. Waxman Sales, LLC conducts business as BirdRock in this judicial district.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1338, and 1367.

6.     This Court has personal jurisdiction over BirdRock because BirdRock has engaged in the following acts in this judicial district: transacting and soliciting business, contracting to supply goods, advertising and marketing goods, supplying and selling goods to buyers, and selling goods through online sales to customers. Additionally, BirdRock's New York contacts satisfy the constitutional requirements of minimum contacts and reasonableness under due process.

7.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and 1391(d), because on information and belief, BirdRock has engaged in the complained-of acts in this judicial district.

## PRELIMINARY STATEMENT

8.     This is an action to enforce and protect Umbra's valuable intellectual property rights. Umbra is a design and manufacturing company specializing in houseware products. The products at issue in this case are multi-prong wall hooks with retractable hooks. Umbra owns a trademark on the FLIP mark, U.S. Registration No. 5,254,846, in International Class 020 for "[w]all hooks made primarily of wood and also containing metal."

9.     Defendant BirdRock, a direct competitor of Umbra, has adopted Umbra's FLIP trademark to identify a knock-off line of multi-prong wall hooks with retractable hooks. BirdRock's conduct constitutes counterfeiting, willful trademark infringement, and unfair

- 2 -

competition. BirdRock should be enjoined from any further unlawful acts and Umbra should be awarded money damages for all prior acts of infringement and competitive injury.

## FACTUAL BACKGROUND

### Umbra's Business

10. Over the last four decades, Umbra has developed and maintained an impeccable reputation as a design and manufacturing company specializing in innovative houseware products. Umbra has established a valuable trade name, a reputation for excellence, and longstanding relationships with retailers and customers in the United States and internationally.

11. Umbra is a worldwide leader in the design and manufacture of original, contemporary, and affordable product designs for every room in the home. Umbra's products are available from numerous retailers online and in stores. In total, Umbra's products are sold by over 25,000 commercial retailers in over 120 countries, including the United States.

12. Umbra has invested substantial amounts of money, time, and other resources to develop and maintain these products and the goodwill associated with its innovative houseware designs.

13. One of the product lines that Umbra has developed are multi-prong wall hooks with retractable hooks. These products are protected by valuable intellectual property rights owned by Umbra.

14. Sometime before 2001, based on its knowledge of the houseware products industry, Umbra identified the need for a modern, space-saving wall hook design.

15. Following Umbra's investment of extensive time, labor, and development costs, Umbra's multi-prong wall hooks with retractable hooks were brought to market in 2001. Umbra's catalog product pages from 2001 and 2002 are pictured below.

- 3 -





16.     Umbra's multi-prong wall hooks with retractable hooks are contemporary and innovative. The wall hooks can be mounted on any wall in the home or conveniently hung behind a door. The product comes in various sizes, materials, and colors. The retractable hooks are common to all models in this product line. When in use, the product's hooks extend perpendicularly to the mounting rack. When not in use, the product's hooks retract and lay flat against the mounting rack. The retractable hooks save space and provide a clean, modern aesthetic. Two examples of Umbra's wall hooks—as currently available from online retailers and in stores—are pictured below.

 

17.     Due to Umbra's favorable business reputation and the innovative design of Umbra's retractable wall hooks, Umbra's product launch was a commercial success. As a result, Umbra further invested, developed, and expanded its product line of wall hooks with retractable hooks. Currently, Umbra offers wall hooks with retractable hooks in over fifteen different models.

18.     Since launching its product line of multi-prong wall hooks with retractable hooks in 2001, Umbra has sold over 80,000 units and generated over 4.6 million dollars in total revenue from this product line.

- 5 -

19.     Umbra's wall hooks with retractable hooks are extensively marketed and sold. These products are also available from various other sources, including Amazon, Wal-Mart, Kohl's, and The Container Store. For example, Umbra's wall hooks with retractable hooks are a top-100 best-selling product in Amazon's coat-rack category.

### Umbra's FLIP Trademark

20.     As early as 2001, Umbra used the FLIP mark in connection with its multi-prong wall hooks with retractable hooks.

21.     Umbra's FLIP mark distinguishes this product line from all others. While other wall hooks protrude from the wall at all times, Umbra's wall hooks can be deployed in their extended orientation as needed. This feature, along with Umbra's decades-long reputation as in industry leader in the modern houseware product space, is the key to the commercial success of Umbra's wall hook product line.

22.     On November 14, 2016, Umbra filed a trademark application with the United States Patent and Trademark Office (the "PTO").

23.     On August 1, 2017, the PTO duly and legally issued Registration No. 5,254,846 for Umbra's use of FLIP for its "[w]all hooks made primarily of wood and also containing metal." A true and correct copy of U.S. Trademark Registration No. 5,254,846 is attached hereto as Exhibit A.

24.     Umbra is the owner of the entire right, title, and interest in and to U.S. Registration No. 5,254,846, and as such, has the right to sue and recover for past, present, and future infringement of U.S. Registration No. 5,254,846 and to obtain the relief claimed in this Complaint. U.S. Registration No. 5,254,846 is in full force and effect.

25.     Umbra is also the owner of all common law rights to the FLIP mark for wall hooks with retractable hooks as a result of Umbra's advertising, offering for sale, and sale, throughout the United States and elsewhere, of wall hooks using the FLIP mark since 2001.

26.     Without Umbra's authorization, BirdRock has advertised, offered for sale, distributed, and sold wall hook products using Umbra's FLIP mark in this judicial district and throughout the United States, and continues to do so.

27.     BirdRock has disregarded and violated Umbra's intellectual property rights in U.S. Registration No. 5,254,846 and Umbra's common law rights despite being advised of such infringement by Umbra.  Umbra has no other recourse than requesting assistance from the Court.

### BirdRock's Counterfeiting, Trademark Infringement, and Unfair Competition

28.     As explained in further detail below, BirdRock has engaged in acts of counterfeiting, trademark infringement, and unfair competition with Umbra's business.  Indeed, BirdRock has misappropriated Umbra's protected trademark in order exploit Umbra's goodwill and reputation, with the intent to sow confusion between the two companies' products.

29.     On information and belief, BirdRock imports household products, including wall hooks, from Asia to North America, where it markets and distributes them.

30.     BirdRock advertises, markets, and offers for sale its wall hooks using the "Flip" mark on numerous online sources, including Amazon and Wal-Mart.  As pictured below, BirdRock's misappropriation of Umbra's protected trademark is evident on BirdRock's individual product pages on Amazon.  Search returns on Amazon also reveal BirdRock's misappropriation of Umbra's protected trademark.  BirdRock employs the same tactics on Wal-Mart's online store, as well.

-7-









31.    BirdRock's packaging for its wall hooks also displays the "Flip" mark.





32.    BirdRock is not affiliated with Umbra in any way.

33.    BirdRock has never been licensed or otherwise authorized by Umbra to use Umbra's FLIP trademark.

34.     On information and belief, BirdRock's use of the "Flip" mark for wall

hooks began many years after Umbra began using its FLIP trademark.

35.     BirdRock's misappropriation of Umbra's FLIP trademark has continued

after Umbra obtained a federal registration for its FLIP mark from the PTO, U.S. Registration No.

5,254,846.  That registration provides Umbra with, inter alia, the nationwide exclusive use of the

FLIP mark in International Class 020 for "[w]all hooks made primarily of wood and also

containing metal" and any confusingly similar trademarks.

### The Parties' History

36.     In March 2017, Umbra learned of BirdRock's infringing conduct.  Despite

Umbra's repeated attempts to provide notice and dissuade BirdRock from further infringing

conduct, BirdRock continues to infringe upon Umbra's protected FLIP trademark.

37.     On April 21, 2017, Umbra emailed Adam Waxman of BirdRock and

requested that BirdRock discontinue its unauthorized use of Umbra's intellectual property rights

by selling wall hooks with Umbra's FLIP trademark.

38.     On April 24, 2017, Mr. Waxman responded by denying any infringement

and refusing to cease BirdRock's distribution.

39.     On October 17, 2017, following the PTO's issuance of Umbra's FLIP

registration, Umbra emailed Adam Waxman of BirdRock and requested that BirdRock cease its

infringing use of the term "Flip" for wall hooks, including in its product description, promotion,

and packaging.

40.     As of this date, Umbra has received no response to its October 17, 2017

request that BirdRock cease its infringing conduct.

41.     Despite notice being provided to BirdRock of its infringing conduct, BirdRock has knowingly advertised, offered for sale, distributed, and sold the infringing products.

### BirdRock's Actions Will Cause a Likelihood of Confusion

42.     BirdRock's actions have caused and will continue to cause a likelihood of consumer confusion or mistake, or mislead or deceive consumers, as to the source, origin, connection, affiliation, sponsorship, or approval of Umbra's products, and have diverted and will divert sales intended for Umbra to BirdRock's competing products.

43.     BirdRock's unauthorized sale, marketing, and advertising using Umbra's protected FLIP trademark have misled and will continue to mislead consumers into mistakenly believing that BirdRock's products are owned, authorized, or otherwise approved by or affiliated with Umbra.

44.     As a result of its infringing conduct, BirdRock has profited through the use of a mark that infringes upon Umbra's trademark.

45.     As a result of BirdRock's infringing conduct, Umbra's reputation and goodwill risk further irreparable harm if BirdRock's conduct is not enjoined.

### COUNT I
### Federal Counterfeiting

46.     Umbra incorporates by reference as though fully set forth herein the allegations contained in paragraphs 1 through 45 above.

47.     Umbra owns and continues to use its FLIP federally registered trademark for "[w]all hooks made primarily of wood and also containing metal."

48.     BirdRock has statutory and/or actual notice of Umbra's FLIP trademark.

49.     BirdRock has infringed and continues to infringe Umbra's FLIP trademark. BirdRock's infringing and spurious use of the "Flip" mark is nearly identical to, or substantially

indistinguishable from, Umbra's FLIP trademark, registered on the Principal Register, U.S. Registration No. 5,254,846, in International Class 020 for "[w]all hooks made primarily of wood and also containing metal."

50.     On information and belief, BirdRock has used and continues to use in commerce the infringing "Flip" mark in connection with the sale, offering for sale, distribution, and advertising of wall hooks in direct competition with Umbra's FLIP trademark products.

51.     BirdRock's infringing use of Umbra's FLIP trademark will cause a likelihood of confusion, mistake, and deception with respect to Umbra's federally registered FLIP trademark by creating the false and misleading impression that BirdRock's products are connected to or affiliated with, or otherwise sponsored, approved, or authorized by Umbra.

52.     BirdRock's use of Umbra's FLIP trademark constitutes a violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114(1)(a).

53.     BirdRock's intentional and willful use of Umbra's trademark is identical to, or substantially indistinguishable from, Umbra's FLIP trademark, and constitutes counterfeiting in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114(1)(a).

54.     As a direct and proximate result of BirdRock's counterfeiting, Umbra has been, and will continue to be, irreparably injured by diminished goodwill and business reputation.

55.     Umbra has no adequate remedy at law because Umbra's FLIP federally registered trademark represents to the public the identity, reputation, and goodwill of Umbra such that damages alone cannot fully compensate Umbra for BirdRock's misconduct.

56.     Unless enjoined by the Court, BirdRock will continue to use and infringe Umbra's FLIP federally registered trademark, to the irreparable injury of Umbra.

57.     In addition to its right to injunctive relief, Umbra is entitled to recover statutory damages in the amount of up to $2,000,000 for each act of counterfeiting, costs, and reasonable attorneys' fees, as this is an exceptional case, under 15 U.S.C. §§ 1114, 1116, and 1117.  Alternatively, Umbra is entitled to recover the profits BirdRock has enjoyed through its infringing conduct, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1114, 1116, and 1117.

## COUNT II
## Federal Trademark Infringement

58.     Umbra incorporates by reference as though fully set forth herein the allegations contained in paragraphs 1 through 57 above.

59.     Umbra owns a valid federal trademark registration for FLIP, and continues to use its FLIP trademark for wall hooks made primarily of wood and also containing metal.

60.     BirdRock's use of the infringing "Flip" mark is identical to Umbra's FLIP trademark.

61.     BirdRock's use of its infringing "Flip" mark for wall hooks is similar in appearance, sound, and meaning to Umbra's FLIP trademark wall hooks.

62.     BirdRock's use of its infringing "Flip" mark for wall hooks creates the same or nearly the same commercial impression as Umbra's FLIP trademark wall hooks.

63.     Umbra's FLIP wall hooks and BirdRock's infringing wall hooks directly compete with each other.  Umbra and BirdRock solicit some of the same customers and use the same or similar channels of trade and commerce to advertise and sell their products.

64.     By using the "Flip" mark, BirdRock seeks to exploit Umbra's goodwill and reputation, with the intent to create confusion about the two companies' products.

65.    On information and belief, BirdRock's products are made of material inferior to Umbra's products and more cheaply manufactured than Umbra's products.

66.    By producing and pricing its wall hooks inexpensively, BirdRock's use of the infringing "Flip" mark is more likely to confuse potential purchasers.

67.    On information and belief, BirdRock knew of Umbra's FLIP trademark prior to BirdRock's first use of its infringing "Flip" mark.

68.    BirdRock's use of Umbra's FLIP trademark has caused and will continue to cause a likelihood of confusion, mistake, and deception by creating the false and misleading impression that BirdRock's goods are connected with or affiliated with, or sponsored, approved, or otherwise authorized by Umbra.

69.    BirdRock's intentional and willful use of its infringing "Flip" mark, which is identical to Umbra's FLIP trademark, will cause a likelihood of confusion, mistake, and deception by confusing consumers as to the source of the products, and constitutes infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114(1)(a).

70.    As a direct and proximate result of BirdRock's infringement, Umbra has been, and will continue to be, irreparably injured in its business through diminished goodwill and reputation.

71.    Umbra has no adequate remedy at law because its FLIP trademark represents the identity, reputation, and goodwill of Umbra to the public, such that damages alone cannot fully compensate Umbra for BirdRock's continued misconduct.

72.    Unless enjoined by the Court, BirdRock will continue to use and infringe Umbra's FLIP trademark to the irreparable injury of Umbra.

73.     As a direct result of BirdRock's conduct, Umbra has suffered damages and BirdRock has obtained profits and has been unjustly enriched.

74.     Umbra has been damaged by BirdRock's misappropriation of Umbra's FLIP trademark, in an amount to be established at trial.  Furthermore, by its infringing acts, BirdRock has irreparably harmed Umbra and such injury will continue and grow, unless BirdRock is enjoined by this Court.

## COUNT III
## Federal Unfair Competition

75.     Umbra incorporates by reference as though fully set forth herein the allegations contained in paragraphs 1 through 74 above.

76.     Since at least 2001, Umbra has owned and continues to own a valid protected FLIP trademark for wall hooks made primarily of wood and also containing metal.

77.     BirdRock's use of the infringing "Flip" mark is identical to Umbra's FLIP trademark.

78.     BirdRock's use of its infringing "Flip" mark for wall hooks is similar in appearance, sound, and meaning to Umbra's FLIP trademark wall hooks.

79.     BirdRock's use of its infringing "Flip" mark for wall hooks creates the same or nearly the same commercial impression as Umbra's FLIP trademark wall hooks.

80.     Umbra's FLIP wall hooks and BirdRock's infringing wall hooks directly compete with each other.  Umbra and BirdRock solicit some of the same customers and use the same or similar channels of trade and commerce to advertise and sell their products.

81.     By using the "Flip" mark, BirdRock seeks to exploit Umbra's goodwill and reputation, with the intent to create confusion about the two companies' products.

82.     On information and belief, BirdRock's products are made of material inferior to Umbra's products and more cheaply manufactured than Umbra's products.

83.     By producing and pricing its wall hooks inexpensively, BirdRock's use of the infringing "Flip" mark is more likely to confuse potential purchasers.

84.     On information and belief, BirdRock knew of Umbra's FLIP trademark prior to BirdRock's first use of its infringing "Flip" mark.

85.     BirdRock's use of Umbra's FLIP trademark has caused and will continue to cause a likelihood of confusion, mistake, and deception by creating the false and misleading impression that BirdRock's goods are connected with or affiliated with, or sponsored, approved, or otherwise authorized by Umbra.

86.     BirdRock's intentional and willful use of "Flip" marks that are identical to Umbra's FLIP trademark constitutes unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

87.     As a direct and proximate result of BirdRock's unfair competition, Umbra has been, and will continue to be, irreparably injured in its business through diminished goodwill and reputation.

88.     Umbra has no adequate remedy at law because its FLIP trademark represents the identity, reputation, and goodwill of Umbra to the public, such that damages alone cannot fully compensate Umbra for BirdRock's continued misconduct.

89.     Unless enjoined by the Court, BirdRock will continue to use and infringe Umbra's FLIP trademark to the irreparable injury of Umbra.

90.     As a direct result of BirdRock's conduct, Umbra has suffered damages and BirdRock has obtained profits and has been unjustly enriched.

91.     Umbra has been damaged by BirdRock's unfair competition with Umbra's FLIP trademark, in an amount to be established at trial.  Furthermore, by its infringing acts, BirdRock has irreparably harmed Umbra and such injury will continue and grow, unless BirdRock is enjoined by this Court.

## COUNT IV
## Common Law Unfair Competition

92.     Umbra incorporates by reference as though fully set forth herein the allegations contained in paragraphs 1 through 91 above.

93.     Umbra is the exclusive owner of the FLIP trademark, which is used in connection with its wall hooks made primarily of wood and also containing metal.

94.     Umbra has created its extensive wall hook product line through the investment of time, labor, skill, and money.

95.     Umbra's FLIP wall hooks and BirdRock's infringing wall hooks directly compete with each other.  Umbra and BirdRock solicit some of the same customers and use the same or similar channels of trade and commerce to advertise and sell their products.

96.     On information and belief, after seeing Umbra's commercial success, BirdRock began using Umbra's trademarks in competition with Umbra.

97.     By affixing a protected trademark to a similar product in order to compete against Umbra, BirdRock has misappropriated a commercial advantage belonging to Umbra.

98.     By affixing a protected trademark on the packaging of a similar product in order to compete against Umbra, BirdRock has misappropriated a commercial advantage belonging to Umbra.

99.     BirdRock has also engaged in bad faith misappropriation of the labors of Umbra which is likely to cause confusion, or to deceive purchasers as to the product's origin.

100.    BirdRock's actions have caused significant commercial damage to Umbra.

101.    Unless enjoined by the Court, BirdRock will continue to use and infringe Umbra's FLIP mark, to the irreparable injury of Umbra.

102.    BirdRock's acts have been intentional, willful, and in conscious disregard of Umbra's rights, entitling Umbra to the remedies provided under New York law.

### JURY DEMAND

Plaintiff Umbra requests a jury on all issues so triable.

### PRAYER FOR RELIEF

**WHEREFORE,** plaintiff Umbra demands judgment against defendant BirdRock as follows:

(1)    Adjudging that BirdRock's use of the "Flip" mark constitutes counterfeiting;

(2)    Adjudging that BirdRock's counterfeiting was willful and deliberate, and deeming this case exceptional under 35 U.S.C. § 285;

(3)    Adjudging that BirdRock's use of the "Flip" mark constitutes trademark infringement and unfair competition;

(4)    Adjudging that BirdRock's trademark infringement and unfair competition was willful and deliberate, and deeming this case exceptional under 35 U.S.C. § 285;

(5)    Adjudging BirdRock to have engaged in unfair competition with Umbra;

(6)    Permanently enjoining BirdRock, its subsidiaries, affiliates, parents, successors, assigns, officers, agents, servants, employees, attorneys, and all persons acting in concert or in participation with BirdRock:

(a)      from using "Flip" alone or with any other term or design as a trade name or trademark, or domain name, or any trade name, trademark, or domain name confusingly similar thereto, in connection with the sale, offer for sale, distribution, advertisement, or any other use in connection with wall hooks;

(b)      from infringing Umbra's FLIP trademark;

(c)      from otherwise engaging in unfair competition with Umbra in the offering for sale, distribution, and advertisement wall hooks;

(d)      from falsely representing itself or its products as being connected with Umbra or Umbra's products, or sponsored by or associated with Umbra, or engaging in any act which is likely to cause the trade, contractors, customers, and/or members of the purchasing public to believe that BirdRock is associated with Umbra;

(e)      from using any reproduction, counterfeit, copy, or colorable imitation of Umbra federal or common law trademarks in connection with the publicity, promotion, sale, or advertising of wall hooks; and

(f)      from assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (a) through (e) above;

(7)      Permanently enjoining BirdRock, its subsidiaries, affiliates, parents, successors, assigns, officers, agents, servants, employees, attorneys, and all persons acting in concert or in participation with BirdRock, from engaging in unfair competition with Umbra and its wall hooks products, and specifically, from directly or indirectly making, using, selling or offering for sale any products branded with Umbra's FLIP federally registered or common law trademarks;

- 20 -

(8)     Ordering that BirdRock expressly abandon any trademark, trade name, or business name filings or registrations that comprise or include the "Flip" mark, which it has made or secured;

(9)     Ordering that, on or before thirty days after the entry and service of an injunction, BirdRock serve and file a written report under oath setting forth in detail the manner and form in which it has complied with the injunction;

(10)    Awarding Umbra statutory damages in connection with Counts I and II for BirdRock's intentional and willful violation of 15 U.S.C. § 1114, pursuant to 15 U.S.C. § 1117;

(11)    Awarding Umbra statutory damages in connection with Count III for BirdRock's intentional and willful violation of 15 U.S.C. § 1125(a), pursuant to 15 U.S.C. § 1117;

(12)    Awarding Umbra damages in connection with Counts I through IV in an amount to be determined at trial;

(13)    Awarding Umbra its costs pursuant to 35 U.S.C. § 284 and its reasonable attorneys' fees pursuant to 35 U.S.C. § 285 and 15 U.S.C. § 1117;

(14)    Awarding such other and further relief as the Court deems just and proper under the circumstances.

New York, New York
December 19, 2017

Respectfully submitted,

CURTIS, MALLET-PREVOST,
   COLT & MOSLE LLP


By: ___/s/ Michael R. Graif_____
         Michael R. Graif (MG 4795)
         Nicole M. Mazanitis (NM 1983)
101 Park Avenue
New York, New York 10178
(212) 696-6000

*Attorneys for Plaintiff Umbra LLC*

- 22 -